# Exhibit 1

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| KATHRYN L. BARKER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 4:18-cv-502 |
| ) | |
| UHS OF TEXOMA, INC. d/b/a ) | |
| TEXOMA MEDICAL CENTER ) | |
| ) | |
| Defendant. ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF

KATHRYN L. BARKER

APRIL 25, 2019

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF KATHRYN L. BARKER, produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and -numbered cause on the 25th day of April, 2019, from 10:08 a.m. to 4:08 p.m., before Chrissa K. Mansfield-Hollingsworth, CSR in and for the State of Texas, reported by machine shorthand, at the Law Offices of Ronald R. Huff, located at 112 South Crockett Street, Sherman, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.



## Page 2

```
 1            A P P E A R A N C E S
 2   FOR THE PLAINTIFF:
 3      Mr. Ronald R. Huff
         Law Offices of Ronald R. Huff
 4       112 South Crockett Street
         Sherman, Texas  75090
 5       903.893.1616
         ronhuff@gcecisp.com
 6
 7   FOR THE DEFENDANT:
 8      Ms. Tracy Graves Wolf
         Lewis, Brisbois, Bisgaard and Smith, LLP
 9       2100 Ross Avenue
         Suite 2000
10       Dallas, Texas  75201
         214.722.7144
11       tracy.wolf@lewisbrisbois.com
12
     ALSO PRESENT:
13
        Ms. Stephanie Moore, Videographer
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1                   INDEX
 2
 3   Appearances......................   02
 4   Stipulations....................   06
 5
     KATHRYN L. BARKER
 6
        Examination by Ms. Wolf...............  04
 7
 8   Signature and Changes..........................  161
 9   Reporter's Certificate.........................  163
10
                     EXHIBIT INDEX
11
     NO.    DESCRIPTION                            PAGE
12
     1    Defendant's Notice of Intent to Take
13        the Oral and Videotaped Deposition of
          Kathryn L. Barker..................   73
14
     2    Complaint............................   73
15
     3    Plaintiff's Initial Disclosure
16        Statement...........................   98
17   4    Text Messages........................  125
18   5    Employment Records....................  139
19   6    Corrective Action....................  145
20
                  CERTIFIED QUESTIONS
21
     NO._____PAGE/LINE
22
23   1         .....................   119/25
24
25
```

## Page 4

```
 1              P R O C E E D I N G S
 2            VIDEOGRAPHER:  Today is Thursday, April 25th.
 3   We are on the record at 10:08.  This is the videotaped
 4   deposition of Kathryn Barker.  Will counsel please state their
 5   appearances for the record.
 6            MR. HUFF:  Yeah.  My name is Ron Huff.  I'm here
 7   on behalf of Ms. Barker.
 8            MS. WOLF:  My name is Tracy Wolf.  I'm here on
 9   behalf of UHS of Texoma, Inc. doing business as Texoma Medical
10   Center.
11            VIDEOGRAPHER:  Will the court reporter please
12   swear in the witness.
13            (Witness sworn in)
14            KATHRYN L. BARKER,
15   having been first duly sworn, testified as follows:
16                   EXAMINATION
17   BY MS. WOLF:
18       Q.  Good morning, Mrs. Barker.
19       A.  Good morning.
20       Q.  My name is Tracy Wolf.
21       A.  Hi, Tracy.
22       Q.  I'm here today to take your deposition.  Have you
23   ever been deposed before?
24       A.  One time.  One time in the way past for TMC.
25       Q.  Okay.  Do you recall when that was?
```

## Page 5

```
 1       A.  No.  Years and years.  I worked there for 20 years,
 2   so...
 3       Q.  Okay.  Do you know what type of a matter it was?
 4       A.  It was a -- it was a -- it was a patient that -- I
 5   really don't remember the circumstances, but we had to recall
 6   some of the details about their stay at TMC, but I don't really
 7   remember anything else.
 8       Q.  Okay.  Well, so far, we're off to a good start, but
 9   just to kind of refresh your recollection about depositions.
10   I'm sure Mr. Huff here, your attorney, has gone over some of
11   this with you, but one of the things we have to remember
12   throughout today is that we have a court reporter sitting here
13   with us taking down everything we say.  So we need to be
14   cautious not to speak over one another.  I'm really bad about
15   that, so we'll have to both work hard together today to make
16   sure that she's able to take everything down that both of us
17   are saying.
18            I will ask that because it is a deposition -- we
19   do have a videographer here, but everything you say will need
20   to -- you to say verbally for the benefit of the court
21   reporter.  A lot of times in -- when you're in a conversation,
22   you'll shake or nod your head.  We'll need an actual verbal
23   answer so that can be taken down.  Also, the court reporter
24   swore you in.  You understand, of course, that this is the same
25   as if you were sitting in front of a judge and jury?
```



Page 154

1    Q.  (By Ms. Wolf) Do you have the exhibits?  I don't
2  know if I've handed you that one yet or not.
3         MR. HUFF:  What number is this?
4         MS. WOLF:  I don't know.
5         MR. HUFF:  I don't either.  Oh, it's that one.
6  It is -- let's turn to Exhibit 5.  Okay.  If you look at the
7  page numbers on the very bottom where it says DEF and there's
8  000255, I'll ask you to turn to that page.  It's about not even
9  a quarter of the way into that -- that group of documents.
10   A.  Okay.
11   Q.  Do you see this document?
12   A.  Do I see it?  Yes.
13   Q.  Okay.
14   A.  I do.
15   Q.  Do you see what type of document it is?  Is it an
16  e-mail?
17   A.  Yes.  I see -- is it an e-mail?  Yes, I guess.
18   Q.  And do you see who it's from?
19   A.  Dayna.
20   Q.  Do you see who it's to?
21   A.  Mari Anne.
22   Q.  Okay.  Can you read the second paragraph of this
23  e-mail where it starts with, Each speech pathologist?
24   A.  Each speech pathologist was expected to see six to
25  eight patients each day and finish all associated documentation

Page 155

1  in the eight to ten-hour workday.  Not only did Kathy almost
2  always see far less patients than other therapists, many days
3  as few as two or three, but she frequently put in overtime
4  hours to complete documentation despite her light caseload.
5  Her colleagues were left covering the extra patients she was
6  unable and unwilling to see.
7    Q.  Is this a true statement?
8    A.  I was never unwilling to see patients.
9    Q.  Okay.
10   A.  That is not a true statement.  There -- there were
11  times that I would assign them to see a normal load and I would
12  do paperwork because I had more responsibilities.  I had
13  different responsibilities than they had or I had a meeting
14  and -- or I had a student that I was working with.  And so --
15  and did I ever do that when -- when I didn't have that?  Maybe.
16  Maybe I did, because I had some other something that I was
17  supposed to do or I wanted to go back and check on a patient or
18  I wanted to see a patient a second time.  So, I mean, there are
19  many reasons why I would do that.
20   Q.  Okay.  So that would be -- would that be a common
21  occurrence or a rare occurrence, then?
22   A.  Well, in my time there, I would say it was a rare
23  occurrence, but it did occur more toward the end because we had
24  more therapists and I had more responsibilities other than
25  patient care than they did.

Page 156

1    Q.  Okay.  Mrs. Barker, do you recall signing an
2  arbitration or an ARC agreement at TMC?
3    A.  What is that?
4    Q.  An agreement that if any disputes arise, you'll
5  consent to go to arbitration?
6    A.  No, I do not recall anything like that.
7    Q.  Okay.  Did you ever sign an opt-out, that you would
8  not agree to arbitrations if any -- arbitration if any dispute
9  arised?
10   A.  I don't recall that.
11   Q.  Okay.
12   A.  I don't know how I -- I mean, I don't know how people
13  are supposed to remember all these things that might have been
14  years ago, but, no, I do not recall either thing.
15   Q.  When you took courses on the computer at TMC, did you
16  receive a certificate of completion?
17   A.  On some.
18   Q.  Did you ever receive a certificate of completion
19  without completing a course?
20   A.  I don't -- I don't know.  I don't -- I don't know
21  what you're referring to, so I --
22   Q.  Okay.
23   A.  I can't --
24   Q.  Do you recall taking courses on HealthStream at TMC?
25   A.  Yes.  We did it every year.

Page 157

1    Q.  Okay.
2    A.  Most of the time, it was on patient care or drugs or
3  medication issues or -- but I don't remember anything about an
4  arbitration agreement or anything like that.
5    Q.  Okay.  But when you took the courses on HealthStream,
6  you had to click buttons and complete the course in order to
7  get the certificate, correct?
8    A.  Correct.
9    Q.  Okay.
10   A.  But we took them every year except some of the sites
11  do it a little differently.  They have an aide complete all of
12  them for all of the therapists, and so they might not know if
13  they did it or not.
14   Q.  Okay.  I'm going to ask you to turn to Deposition
15  Exhibit Number 6 again.  And go to the third from the last
16  page.  On the subject line, it says, Final written warning
17  notification.  I'm sorry.  Did I direct you to the wrong
18  exhibit?
19   A.  I don't see what you're talking about.
20   Q.  I think I've made an error.
21         MR. HUFF:  Exhibit 6.
22   Q.  (By Ms. Wolf) It's this one right here.
23         MR. HUFF:  It's Exhibit 6.
24   A.  Exhibit 6.  Right here?
25   Q.  Sorry.  It's that one.



Page 162

1  I, KATHRYN L. BARKER, have read the foregoing deposition and hereby affix my signature that same is true and correct,
2  except as noted herein.

5          KATHRYN L. BARKER

8  STATE OF TEXAS  )
9  SUBSCRIBED and sworn to by the said witness, KATHRYN L. BARKER,
10 on this the      day of
11         , 2019.

16         Notary Public in and for
17         the State of
18         Commission expires:

Page 163

1  STATE OF TEXAS  )
2  COUNTY OF GRAYSON  )

6  I, Chrissa K. Mansfield-Hollingsworth, Certified
7  Shorthand Reporter duly commissioned and qualified in and for
8  the State of Texas, do hereby certify that pursuant to the
9  agreement hereinbefore set forth there came before me on the
10 25th day of April, 2019, at the Law Office of Ronald R. Huff,
11 the following named person, to wit, KATHRYN L. BARKER, who was
12 by me duly sworn to testify the truth and nothing but the truth
13 of her knowledge touching and concerning the matters in
14 controversy in this cause; and that she was thereupon carefully
15 examined upon her oath and her examination reduced to writing
16 under my supervision; that to the best of my ability the
17 deposition is a true record of the testimony given by the
18 witness, same to be sworn to and subscribed by said witness
19 before any notary public, pursuant to the agreement of the
20 parties.
21      I further certify that I am neither attorney nor
22 counsel for, nor related to or employed by, any of the parties
23 to the action in which this deposition is taken, and further
24 that I am not a relative or employee of any attorney or counsel
25 employed by the parties hereto, or financially interested in

Page 164

1  the action.
2     In witness whereof, I have hereunto set my hand and
3  affixed my CSR seal this 29th day of April, 2019.

6          Chrissa K. Mansfield-Hollingsworth, CSR
           Magna Legal Services
           Firm Registration No. 633
7          1635 Market Street
           8th Floor
8          Philadelphia, Pennsylvania  19103
           866.624.6221
9          www.magnals.com

